IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-169 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| CHARLES MCBEATH and ANTONIO J. SPIVA, | : | |
| Defendants. | : | |

### ENTRY AND ORDER DENYING DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF DR. BRIAN LEE SPRINGER (DOCS. 79, 86)

This case is before the Court on the Motions in Limine (Docs. 79, 86) filed by Defendants Antonio Spiva and Charles McBeath, both of which seek to exclude the expert testimony of Dr. Brian Lee Springer. On November 1, 2016, the Court held an evidentiary hearing on the Motions in Limine. (Doc. 89.) Spiva submitted a post-hearing memorandum in support of his Motion in Limine, which McBeath subsequently joined. (Docs. 90, 91-92.) The Government filed a Response in Opposition (Doc. 85) to Spiva's opening memorandum, but declined to respond to his post-hearing memorandum. This matter is now ripe for review. For the reasons below, the Court **DENIES** the Motions in Limine (Docs. 79, 86).

### BACKGROUND

In the Superseding Indictment, Defendants Spiva and McBeath are charged with conspiracy to possess with intent to distribute and distribute heroin (in excess of 100 grams) and fentanyl (Count 1); distribution of fentanyl resulting in death (Counts 2-3); distribution of heroin (Counts 4-6); maintaining drug-involved premises (Counts 7-10); and possession with intent to

distribute controlled substances (Counts 11-12). (Doc. 66.)

On October 6, 2016, the Government notified Defendants that it would call Dr. Brian Lee Springer, M.D., to testify as an expert witness at trial. (Doc. 85-1.) The Government indicated that Dr. Springer's anticipated testimony would include his experience—as an emergency room physician—in treating individuals who have overdosed from heroin, fentanyl and other opioids. (*Id.*) In addition, the Government expected that Dr. Springer would testify regarding the nature of natural, synthetic, and semi-synthetic opioids, including heroin and fentanyl, the nature of Narcan (the brand name for a medication containing Naloxone that is used to treat opioid overdoses), the physiological effects resulting from the use of opioids like heroin and fentanyl, as well as the physiological effects of Narcan when used to treat opioid overdose. (*Id.*) The Government also provided Defendants with a copy of Dr. Springer's *curriculum vitae*. (*Id.*)

Dr. Springer and Patrick Bell testified at the November 1, 2016 hearing on the Motions in Limine. (Doc. 89 at 2.) Bell is a detective in the narcotics bureau of the City of Dayton, Ohio police department and member of the Heroin Eradication Apprehension Team Task Force—also known as the "HEAT" Task Force. (*Id.* at 6.) Bell testified regarding his involvement in the investigation of five overdoses and two deaths from overdoses that occurred on Memorial Day weekend of 2015. (*Id.* at 7, 9.) The Government offered Bell's testimony to establish the relevance of Dr. Springer's testimony to the evidence that will be presented at trial. The five individuals who overdosed and the first responders who treated them are expected to testify at trial. (Doc. 89 at 15.)

Bell's investigation concluded that the five individuals who overdosed had purchased heroin from Defendants Spiva and/or McBeath. (*Id.* at 11-12.) Bell testified that each of these

2

individuals was revived after receiving Narcan. (*Id.* at 11-14.) Of the two deaths, one was caused by a heroin overdose and the other was caused by an overdose of heroin and fentanyl. (*Id.* at 11-12.) Bell further testified that the HEAT Task Force determined that Defendants Spiva and McBeath were responsible for the five overdoses and two deaths. (*Id.* at 8.)

Dr. Springer testified regarding his education, medical training, and employment as a physician by Wright State University, the Boonshoft School of Medicine, and the Department of Emergency Medicine. (Doc. 89 at 33-35.) He testified about his knowledge of opioids, including heroin and fentanyl, and how Narcan interacts with the human body to reverse an opioid overdose. (*Id.* at 36-37.) On cross-examination, Dr. Springer testified regarding the analysis that he performs, as an emergency room physician, to determine whether a patient might be suffering from an opioid overdose and whether the administration of Narcan would be appropriate. (*Id.* at 45-52.) Dr. Springer was aware only that this case involved opioids, and had not been told about any of the specific facts relating to the charges against Defendants Spiva and McBeath. (*Id.* at 35.)

## **ANALYSIS**

The question of whether Dr. Springer's testimony is admissible is determined by Federal Rule of Evidence 702. Under Rule 702, a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in which the Supreme Court set forth a non-exclusive checklist of factors for trial courts to use in assessing the reliability of expert testimony. Those factors are (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 592-95.

The Advisory Committee Notes for Rule 702 state that an expert may provide an opinion or "give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." *Id.* (Notes to 1972 Proposed Rules). In the Notes to the 2000 Amendments, the Advisory Committee underscored that experts may provide a general exposition of scientific principles, rather than an opinion, stating:

> Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

*See also, e.g., United States v. Brinson*, 772 F.3d 1314, 1319-20 (10th Cir. 2014) (district court did not abuse its discretion by permitting an expert that "was not familiar with the facts in the case" to testify "about characteristics of the prostitution trade" because his testimony was sufficiently reliable and "could have proven helpful" to the jury).

4

Defendants do not challenge Dr. Springer's qualifications to testify as an expert regarding opioids and the use of Narcan to treat opioid overdoses. (Doc. 89 at 4.) Rather, Defendants argue that Dr. Springer's testimony is irrelevant and that there is "no evidence" to support his anticipated testimony. (Docs. 90, 92.)

As to relevancy, Defendants' initial argument is that Dr. Springer's testimony would not be helpful because the average juror would have no difficulty independently assessing the issues relating to opioids and the use of Narcan in this case. Doc. 90 at 2 (citing *United States v. Romo*, 413 F.3d 1044, 1050 (9th Cir. 2005).) This argument does not withstand scrutiny. Counts 2 and 3 of the Superseding Indictment allege that Defendants distributed fentanyl, which resulted in the deaths of two individuals. It is highly unlikely that the average juror would understand—without the assistance of an expert in opioids—what fentanyl is, how it affects the human body, and under what circumstances it might cause death.

Defendants note that Detective Bell testified that a layperson can tell when someone has suffered an overdose. (Doc. 89 at 23.) He also testified, however, that he could not explain in medical terms what happens to a person who has overdosed on heroin or fentanyl. (*Id*. at 16.) To assess Defendants' guilt under Counts 2 and 3, the jury must be able to determine more than simply whether the fentanyl allegedly distributed by Defendants caused an overdose. The jury must be able to determine whether there is a causal link between that fentanyl and two individuals' deaths. Making that determination would be aided by Dr. Springer's medical understanding of fentanyl and its mechanism of action.

Defendants also argue that "[a]n expert witness should not usurp the jury's function of weighing evidence and making credibility determinations." (Doc. 90 at 3 (citing *United States v.*

5

*Farrell*, 563 F.3d 364, 377 (8th Cir. 2009).) The Government represented that Dr. Springer will not provide any opinion as to whether the heroin and fentanyl sold by Defendants caused any of the overdoses or deaths alleged in this case. Indeed, Dr. Springer does not have knowledge of any specific facts about this case. Permitting Dr. Springer to testify therefore cannot usurp the jury's function as the ultimate finder of fact.

Defendants' argument that there is "no evidence" to support Dr. Springer's testimony also fails. Defendants cast this argument in terms of both the "reliability" of Dr. Springer's testimony and whether the Government has established a foundation for its relevance. (Doc. 90 at 4-5.) The reliability of Dr. Springer's testimony is not at issue. Defendants cross-examined Dr. Springer at the November 21, 2016 hearing about his anticipated testimony, yet they have not identified any specific information that Dr. Springer will provide that is unreliable or lacks a scientific basis. Dr. Springer's anticipated testimony will not include any novel theory or research about opioids, and he is not expected to render or any opinion regarding the specific facts in this case. Defendants do not contest that Dr. Springer is qualified to provide general information regarding opioids—specifically heroin and fentanyl—and the use of Narcan to counteract their effects. The notion that Dr. Springer's testimony is unreliable is unsupported.

Defendants also argue that the Government failed to establish a foundation for the relevance of Dr. Springer's testimony. Specifically, Defendants contend that Dr. Springer's testimony about what happens when someone overdoses is irrelevant because the evidence will not establish that anyone suffered an overdose. Additionally, Defendants argue that Dr. Springer's testimony would be unfairly prejudicial because it will suggest to the jury that overdoses did occur—why else would the Government present such testimony?—when, in fact, they did not.

6

Defendants' contention that the Government must establish that an overdose occurred to present Dr. Springer's testimony is incorrect.  The Government need only establish that (1) Dr. Springer is qualified (not in dispute), (2) his expert testimony on the subject will assist the factfinder (it will), (3) the testimony is reliable (not genuinely in dispute); and (4) his testimony fits the facts of the Government's case (it does).  Bell testified that five individuals overdosed on heroin and/or fentanyl sold by Defendants and that first responders administered Narcan to each of them.  At trial, the Government plans to present testimony from not only Bell, but the individuals who overdosed and the first responders.  There is a factual nexus between such evidence and Dr. Springer's anticipated testimony.  Defendants appear to argue that the Government's evidence is insufficient to establish that any overdose actually occurred.  The Government does not have to prove that fact, however, to establish the relevance of Dr. Springer's testimony.  The jury will determine whether or not the Government has proved its case beyond a reasonable doubt.

## **CONCLUSION**

For the foregoing reasons, the Motions in Limine (Docs. 79, 86) are **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, December 8, 2016.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

7